Argued and submitted August 17, reversed and remanded November 30, 2016

In the Matter of E. J. J.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

L. D. K.,
*Appellant.*

Marion County Circuit Court
15JU00071;
A161240 (Control)

In the Matter of X. T. J.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

L. D. K.,
*Appellant.*

Marion County Circuit Court
15JU00072; A161242

In the Matter of E. W. B.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

L. D. K.,
*Appellant.*

Marion County Circuit Court
15JU00073; A161244

In the Matter of E. M. J.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

L. D. K.,
*Appellant.*

Marion County Circuit Court
15JU00074; A161245

In the Matter of G. Z. B.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

L. D. K.,
*Appellant.*

Marion County Circuit Court
15JU00080; A161246

In the Matter of A. L. B.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

L. D. K.,
*Appellant.*

Marion County Circuit Court
15JU00083; A161247

387 P3d 462

Megan L. Jacquot argued the cause and filed the brief for appellant.

Keith L. Kutler, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Duncan, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

## DUNCAN, P. J.

Mother appeals judgments terminating her parental rights to six children. The case against mother rested, in large part, on mother's relationship with the father of the three youngest children, BJ. The Department of Human Services (DHS) sought to terminate mother's rights on the ground, among others, that mother suffered from a personality disorder that causes mother to be overly dependent on her partner—in this case, BJ, whom DHS alleged was himself unfit to parent the children. After a consolidated trial, the trial court terminated both mother's and BJ's parental rights. In *Dept. of Human Services v. B. J. J.*, 282 Or App 488, 387 P3d 450 (2016), also decided this date, we have concluded that DHS failed to prove that BJ was an unfit parent at the time of the termination hearing. In light of that decision and the reasons that follow, we likewise reverse the termination judgments with respect to mother.

The basic chronology of events is set forth in *B. J. J.*, and a detailed recitation of that chronology and the case against mother would not benefit the bench, the bar, or the public. In short, mother has struggled with drug addiction for much of her life and has lived a life marked by instability. She has six children: EB, A, and G, whose father is CB; and EM, EJ, and X, whose father is BJ, to whom she is engaged. After her six children were taken into custody in May 2013, mother stipulated to jurisdiction on the ground that she had a substance abuse problem that interfered with her parenting.

Mother was later evaluated by a psychologist, Dr. Cook, who diagnosed mother with "Adjustment Disorder with both Anxiety and Depression" and "Personality Disorder NOS, Dependent and Avoidant." The "dependent and avoidant" features of her personality cause mother to be overly dependent on her partners and "weak and deferential in relationships." Cook recommended that mother engage in Dialectical Behavioral Therapy (DBT) to address her lack of self-esteem, boundaries, and assertiveness. DHS then filed new jurisdictional petitions against mother, adding allegations that mother had mental health issues that, left untreated, compromise her ability to parent.

After a consolidated trial, in which DHS presented evidence of BJ's violent tendencies and use of physical discipline with the children, mother's deference to BJ as a disciplinary figure (including during visitations), mother's own limitations in controlling and engaging with all six children during visitation, and mother's failure to complete a DBT program, the trial court terminated mother's and BJ's parental rights to their three children (EM, EJ, and X) and mother's rights to her older three children (A, EB, and G).[1]

On *de novo* review, we are not persuaded that DHS proved by clear and convincing evidence any of the alleged bases for mother's present unfitness. *See* ORS 419B.504 ("The rights of the parent or parents may be terminated as provided in ORS 419B.500 if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child or ward and integration of the child or ward into the home of the parent or parents is improbable within a reasonable time due to conduct or conditions not likely to change."); *State ex rel SOSCF v. Stillman,* 333 Or 135, 149, 36 P3d 490 (2001) (emphasizing requirement of *present* unfitness).

First, by the time of trial, mother's substance abuse problems had been treated successfully; she had been clean for two years and there was no indication that her parenting was impaired by the use of illegal drugs. Moreover, she consistently engaged in visitation from the time that her children were taken into custody, and, although she was late to many visits, there is no basis on this record to conclude that she was unfit by reason of physical or emotional neglect at the time of trial.

In addition, as we explained in *B. J. J.,* DHS failed to prove that BJ's use of physical discipline or lack of parenting skills are seriously detrimental to his three children. Consequently, we find that DHS has failed to prove that mother's relationship with BJ, and her dependence on him as a result of her mental health problems, is seriously detrimental to those children. Furthermore, we find that,

---

[1] CB, the biological father of A, EB, and G, stipulated to termination of his parental rights.

although there is stronger evidence that mother's older three children are fearful of BJ, DHS failed to prove by clear and convincing evidence that mother's relationship with and reliance upon BJ is "seriously detrimental" to those older children such that termination of her rights is warranted.

We also are not persuaded by clear and convincing evidence that mother's lack of parenting skills renders her unfit. Viewing the evidence of mother's visitation and parenting skills as a whole, the record reflects that mother's parenting skills, although less than ideal, are not so deficient that they are seriously detrimental to the children or pose the kind of risk that would justify termination of her rights.[2] See State ex rel Dept. of Human Services v. Smith, 338 Or 58, 87, 106 P3d 627 (2005) ("[T]he deficiencies perceived here are not so severe as to implicate the standard that the statute sets out for the termination of parental rights and likely are no worse than those of thousands of Oregonians who ultimately succeed, without state intervention, in raising their children safely.").[3]

Finally, for reasons similar to those expressed in B. J. J., 282 Or App at 507-09, we are not persuaded that mother is unfit on the ground that she failed to present a viable plan for return of the children. At the time of trial, mother and father had housing that, although small, was

---

[2] Sanders, a DHS worker who supervised most of the visits with the three older children after June 2015, testified that mother continued to rely on Sanders to be "the heavy" in terms of discipline but that mother was "very receptive" to her redirection and parenting suggestions. Tavernier, a DHS caseworker, testified that she observed children engaging in unsafe behavior (climbing, roughhousing, etc.) during visits, but she acknowledged that, "through a lot of the visitation, Mom is demonstrating the ability to be receptive to the feedback; not getting angry, not getting hostile." And, as we alluded to in B. J. J., 282 Or App at 497-98, the parenting coaches who observed visits, Ruks and Crank, did not see anything that constituted a safety threat to the children during the visits. In fact, Ruks testified that the visits with mother appeared to be both "emotionally and physically safe" for the children, and that mother had incorporated some of her parenting suggestions during subsequent visits. Crank similarly testified that she did not have any safety concerns with mother's visits and found mother able and willing to engage with her, even if mother needed to be reminded of certain strategies.

[3] Given DHS's failure to prove that mother's mental health issues and parenting skills are seriously detrimental to the children, we are likewise unpersuaded that mother's failure to make lasting adjustments to those conditions rendered her unfit at the time of trial.

clean and well kept. And, although the children have some special needs, we are not persuaded that mother would be unable to meet those educational and medical needs in light of the evidence of her willingness to engage with parenting coaches and social services aimed at her parenting skills.

In conclusion, we find that DHS's evidence was insufficient to prove any of the alleged bases for unfitness, whether the allegations are viewed individually or collectively. Accordingly, we reverse and remand the judgments terminating mother's parental rights to EB, A, G, EM, EJ, and X.

Reversed and remanded.